We now move to the fourth case this morning, Nichols v. Longo and Associates. Mr. Longo, you may proceed. Thank you. May it please the court, my hope is to argue limited issues and stand on the briefs regarding the other issues unless your honors prefer something different that's not the same. My plea is that this court will be open to the possibility of taking the next step of reversing. May I reserve two minutes for rebuttal? You keep track of your own rebuttal time. Okay, thank you. Regarding travel, we ask only what the law allows, what the Seventh Circuit allows. Based upon this court's methodology and Henry, plaintiff's undisputed affidavit states that plaintiff charges paying clients to travel downtown to court. Therefore, a plaintiff is entitled to be compensated for this travel. Plaintiff goes downtown to the courthouse maybe one, every one, one and a half months, every two months or every three months. Therefore, indisputably, plaintiff does not commute. The district court's methodology of ignoring this undisputed affidavit and the dictionary definition of commute was respectfully erroneous or the district court abused its discretion. Therefore, plaintiff requests that this court consider reinstating the 109 hours that the district court removed as part of its 65% slash. Regarding the hourly rate, the Supreme Court and indeed this court has repeatedly instructed district courts that they must utilize the current market when considering fee compensation factors, not what the district courts think or feel the market should be. This court in GDF asserted that district courts cannot make declarations upon the market. Rather, the market is determined by third-party attorney affidavits. Therefore, turning to the market, plaintiff presented eight undisputed third-party attorney market affidavits. The undisputed market evidence is that similar attorneys in skill, reputation, and experience as plaintiff have an hourly rate of over $600. Nevertheless, plaintiff utilized a lower rate of $550. Plaintiff has been charging paying clients $550 at least since 2019. Over 10 years ago, plaintiff received $395 per hour from Judge Taylor, thereafter Illinois Justice Taylor, who held in the order that $395 per hour was low for an attorney such as plaintiff. The district court's $360 hour is a decrease from 10 years ago. Attorneys of three, four, or five years in practice received $360 an hour, not attorneys of over 37 years. Putting aside the Title VII caps, plaintiff acquired a recovery for Mr. Nichols of about $3,500,000. Plaintiff has had other sizable verdicts over the years. Some may surmise that attorneys of three, four, or five years in practice receiving $360 per hour may not have these sizable verdicts. The only evidence before the district court was the plaintiff's undisputed eight attorney market affidavits. Therefore, the correct methodology and correct exercise of discretion was to rely heavily on them. However, the district court respectfully tried to find ways to disregard the eight undisputed market affidavits. In so doing, respectfully, the district court utilized the wrong methodology and abused its discretion. The district court relied heavily on unreasonable considerations, that is, past fee decisions. Unreasonable because defendants presented no attorney market affidavits that the past fee would. However, if the district court uses historic rates, it must ensure that the rate for each year was the current market for that year, for example, 2012, 2013, 2014. Respectfully, the district court did not. The Summerfield $300 rate involved worked hours beginning in 2006. Even if $300 could be utilized heavily as the district court did, defendants presented no third-party attorney market evidence that a $60 increase from 2006 reflects the current market or the market in each individual year, 2012, 2013, et cetera. Since 2006, this $60 increase is $4.62 per year, or since 2012, $8.50 per year. Respectfully, this doesn't entice but rather repels attorneys from these cases, particularly attorneys of 37 years or even attorneys of 10 or 15 years in practice. A precipitous drop of attorneys willing to accept these cases already exists. Plaintiff respectfully submits to your honors that we don't need to worsen this precipitous drop. When this court has allowed district courts to utilize past fee decisions, it was because the plaintiff in those cases utilized them to support their hourly rate. Plaintiff in this case before your honors did not because they are not the current market. If past fee decisions became the benchmark with judges arbitrarily deciding an inflationary rate such as $4.62 per year, then this would overrule current market jurisprudence. Regarding the fees for fee entitlement, the law allows, your honors allow, fees for fee entitlement. Sui sponte, the district court prohibited the plaintiff from even filing his fee or his supplemental time records. The defendants had not demanded this. If your honors please, I will use the remaining time for rebuttal. Thank you, Mr. Longo. Counsel, you may proceed. Good morning, your honors. May it please the court. Assistant Attorney General Bridget D. Bautista on behalf of the Illinois Department of Transportation and Central Management Services. Your honors, this court should affirm the attorney fee award of nearly $800,000 in this case because the district court did not abuse its discretion in ascertaining the load star or in declining an upward adjustment to that amount. First, the district court properly calculated the load star by determining the reasonable hourly rate and the number of hours reasonably expended. With respect to the rate, the district court properly looked to recent fee awards to counsel in this case to determine the appropriate market rate. This court in Spiegen held that fee awards handed down within the last two years are, quote, clearly probative of the market rates. In line with that authority, the district court looked to the recent district court decision, Smith v. Rosebud, in which counsel in this case was awarded an hourly rate of $360. The court adopted that rate for this case, given that in Smith v. Rosebud, the case was litigated for the exact period of time that this case was litigated, from 2012 to 2018. That case was also in line with another recent case of Summerfield v. City of Chicago, which was affirmed by this case, or excuse me, this court in 2017, which affirmed an award of $300 an hour. Thus, it was not an abuse of discretion for the district court to adopt a fee award in line with that recent authority. In addition, with respect to the affidavits, the district court did not abuse its discretion in affording little weight to those affidavits. The affidavits either failed to include the attorney's particular rate or did not establish that the rate was utilized in similar cases. Even if those affidavits had been sufficient, however, the district court had an independent basis for assigning little weight to those affidavits, which was that there had not been a demonstration that counsel in this case had the skill, reputation, and experience as those attorneys submitting declarations. And the court looked to its own experience with counsel in this case, as well as many other district court cases with respect to the skill, reputation, and experience of counsel. Next, the court properly arrived at the reasonable number of hours expended. It properly applied a 20% reduction for hours that were excessive, redundant, and unnecessary. The court listed several examples of excessive billing, including applying, or excuse me, billing 284 hours for a summary judgment response, billing one hour for each hearing attended by those that did not comport with the district court's records of the length of hearings, some of which lasted mere minutes. In addition, the court noted the magistrate judge's indication of several frivolous motions that had been filed. All of this went into the judge's meticulous analysis, finding that there had been an excessive and redundant amount of billing entries in this case. It was also appropriate for the court to apply a 10% reduction for clerical work, as well as to reduce the paralegal work to attorney work. In addition to deducting clerical and paralegal work, it was appropriate for the court to deduct time for commuting. In this case, there were 2.8-hour round trips, 39 2.8-hour round trips billed in this case. The court found in its discretion that it was appropriate to deduct that time. It looked to this court's decision in Henry as to whether those hours were both necessary and ones for which a paying client would pay for. With respect to the necessary indication, or excuse me, analysis, the court noted that it not only affords the option of attorneys to appear by phone, it in fact encourages attorneys to appear by phone. Certainly, some of these appearances were necessary, but the question still remains whether those hours would have been compensated by an individual plaintiff in this case. The court was not convinced, and it was not an abuse of discretion for the court to determine that that showing had not been made. Indeed, when we look to the affidavit that my opponent addresses in this case with respect to whether a client would pay for those hours, that affidavit does not establish that a client would in fact pay for 2.8-hour round trips to and from the courthouse. The affidavit merely established that clients will pay for travel, not this travel, but will pay for travel at the attorney rate. In addition, the court did not abuse its discretion in declining to upwardly adjust the Lodestar. This is a discretionary determination, so again, reviewed for the abuse of discretion standard. There was, and also the Supreme Court has found, will apply only in extraordinary circumstances will upward adjustment apply. This case, according to the court, although it was a difficult set of facts and counsel achieved a significant victory, did not rise to an extraordinary circumstance permitting or militating for an upward adjustment. Finally, with respect for fees, for fees, this again is discretionary determination. The court found that counsel had not exercised good billing judgment and that the, again, nearly $800,000 award in this case properly compensated for the work performed in this case. And if the court has no questions, we would ask that it affirm the district court's decision in this matter. Thank you. Thank you, Mr. Batista. Mr. Longo? May I, I'm wondering if there's any questions I may try to answer. I don't believe there are. Okay, thank you. When, when counsel refers to recent fee awards, that's not to say, for one thing, a fee award of two years, a summer fee related to hours worked in 2006. So even if we could rely on so-called recent fee awards, that's not to say we should reject evidence of the current market. If those fee awards were current market, the defendants would have put in attorney affidavits with this court has repeatedly held, relies upon. They didn't. So there's undisputed affidavits of the market rate. Smith versus Rosebud is a district court decision. It relied on Summerfield's $300 rate with beginning work hours from 2006. There's no discussion in Smith versus Rosebud, but more important, the case of your honor, the district court in this case did not discuss the inflationary rate or what the current hourly rate would be for each year, 2012, 2013, 2014, and then come up with an inflationary rate. Um, yeah, the council mentioned that there was a 10% deduction, a 20% reduction. That's a double dip. That's a double reduction. First, the district court eliminated hours. Then it deducted the remaining hours by 10%. And then on top of that, 20%. Um, as far as one hour hearings, I arrive a half hour early at every hearing. And then there's discussion with defendants afterwards. So that's where the one hour comes in. Um, if I may say, and I realize that, you know, the plaintiff only requests what the law allows. And this court has held that district courts should not look for ways to deny compensation because of a visceral reaction that the compensation is too much. On the other side of the coin, the plaintiff took a big risk by accepting this case and could have lost. And that includes over 3,000 hours of unpaid work and thousands of dollars of law firm resources. The district court slashed fees by 65%, even though plaintiff won every count of the complaint and effectively obtained a recovery of $3,500,000. This 65% slash sends chills to the plaintiff's bar as stated in the beginning. And now in closing plaintiff respectfully, uh, your honors consider the possibility of reversing. Thank you for allowing us to appear before you today. Thank you. Thanks to both counsel and the cases taken under advisement.